**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RALPH MASCI, MELANIE SESSA, and DAMON DANKO,** | : | **CIVIL ACTION** |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| **THE CAPITAL GRILLE, GMRI, INC. D/B/A THE CAPITAL GRILLE, DARDEN RESTAURANTS, INC. D/B/A THE CAPITAL GRILLE,** | : | |
| *Defendants*. | : | **NO. 23-2189** |

**MEMORANDUM**

KENNEY, J.                                                          **January 2, 2024**

Plaintiffs Ralph Masci, Melanie Sessa, and Damon Danko (collectively, "Plaintiffs") bring this action against Defendants The Capital Grille, GMRI, Inc. d/b/a The Capital Grille, Darden Restaurants, Inc. d/b/a The Capital Grille's (collectively, "Defendants," or "GMRI") averring claims of age discrimination in violation of the Age Discrimination in Employment Act (the "ADEA") and the Pennsylvania Human Relations Act (the "PHRA"). Presently before the Court is Defendants' Motion to Compel Arbitration and Dismiss Plaintiffs' Complaint (ECF No. 13), which has been fully briefed. For the reasons that follow, the Court will grant Defendants' Motion to Compel Arbitration (ECF No. 13). An appropriate Order will follow.

**I.      PROCEDURAL HISTORY**

On June 8, 2023, Plaintiffs filed their Complaint alleging age discrimination in violation of the ADEA (Count I) and the PHRA (Count II) against their former employer, Defendants. ECF No. 1. On August 4, 2023, Defendants filed the present Motion to Compel Arbitration and Dismiss Plaintiffs' Complaint (ECF No. 13), to which Plaintiffs filed a Response in Opposition on August 18, 2023 (ECF No. 14).

1

On August 31, 2023, this Court entered an Order directing the parties to submit a joint report regarding limited discovery, if any, on the narrow issue of arbitrability and a proposed schedule for said discovery, a statement of stipulated facts, if any, and deadlines to file reply and sur-reply briefs. ECF No. 15. The parties did so, and the Court approved the parties' proposed deadlines on September 13, 2023. ECF No. 17. On October 13, 2023, the parties filed their Joint Stipulation of Facts (ECF No. 18) and subsequently completed their limited discovery on November 30, 2023 pursuant to the Court's Order on November 2, 2023 (ECF No. 22). On December 11, 2023, Defendants filed a Reply in Support of their Motion (ECF No. 23), and on December 18, 2023, Plaintiffs filed a Sur-Reply in Opposition to the Motion (ECF No. 24). Accordingly, the Motion is fully briefed and ripe for consideration.

## II.   FACTUAL BACKGROUND

Plaintiffs each worked as bartenders for Defendant The Capital Grille located in Philadelphia, Pennsylvania until they were each fired on October 31, 2020. *See* ECF No. 13-3 at 4–5, Varela Decl. In this action, Plaintiffs allege they were fired because of their age and were replaced by younger bartenders in violation of federal and state law. *See generally*, ECF No. 1.

Following this Court's Order of limited discovery concerning the issue of arbitrability, the parties stipulated as follows. First, they stipulated that Plaintiff Ralph Masci was hired on or around January 16, 2004, signed the Dispute Resolution Process ("DRP") Acknowledgement on July 12, 2008, and continued to work for The Capital Grille for more than 10 years after signing that document. ECF No. 18 ¶ 2. Second, they stipulated that Plaintiff Melanie Sessa was hired on or around October 18, 2001, signed the DRP Acknowledgement on July 12, 2008, and continued to work for The Capital Grille for more than 10 years after signing that document. *Id.* ¶ 3. Third, they stipulated that Defendants revised the DRP in 2013 and issued a DRP Updates Document. *Id.* ¶ 4.

Lastly, they stipulated that Plaintiff Damon Danko was hired on or around January 11, 2001, signed the DRP Updates document on or around July 2013, and continued to work for The Capital Grille for more than 5 years after signing that document. *Id.* ¶ 5.

The limited discovery revealed that GMRI utilizes its DRP to resolve employment-related claims with its employees and that its DRP consists of four steps: (1) Open Door, (2) Peer Review, (3) Mediation, and (4) Final and Binding Arbitration. ECF No. 13-3, Varela Decl. ¶ 6. The DRP states, in pertinent part:

> The DRP, instead of court actions, is the sole means for resolving covered employment-related disputes. Disputes eligible for DRP must be resolved only through DRP, with the final step being binding arbitration heard by an arbitrator. This means DRP-eligible disputes will not be resolved by a judge or jury. Neither the Company nor the Employee may bring DRP-eligible disputes to court. The Company and the Employee waive all rights to bring a civil court action for these disputes.

ECF No. 13-3 at 27. The DRP specifically states that claims covered by the DRP "include but are not limited to: claims that arise under the Civil Rights Act of 1964, Americans With Disabilities Act, Fair Labor Standards Act, Age Discrimination in Employment Act, . . . or any federal, state, or local ordinance or statute." *Id.* Additionally, the DRP provides that, "[t]he arbitrator will have the authority to determine whether a dispute is arbitrable and whether it is timely filed and pursued under the DRP and any applicable laws." *Id.* at 33.

## III.   <u>STANDARD OF REVIEW</u>

When faced with a motion to compel arbitration, the court must first decide whether to apply the standard of review set forth in Federal Rule of Civil Procedure 12(b)(6) or Rule 56. *See Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). "Where the affirmative defense of arbitrability of claims is apparent on the face of the complaint (or documents relied upon in the complaint), the [Federal Arbitration Act ("FAA")] would favor resolving a

motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 773–74 (3d Cir. 2013) (cleaned up) (internal citations omitted). "Where arbitrability is not apparent on the face of the complaint, 'the issue should be judged under the Rule 56 standard.'" *Stephenson v. AT&T Servs., Inc.*, No. 21-cv-709, 2021 WL 3603322, at *2 (E.D. Pa. Aug. 13, 2021) (quoting *Guidotti*, 716 F.3d at 773–74) (further citations omitted).

Here, the appropriate standard of review is the Rule 56 standard because Plaintiffs' Complaint makes no mention of the arbitration agreement.  In accordance with *Guidotti*, this Court allowed limited discovery on the issue of arbitration, which has now been completed. *Guidotti*, 716 F.3d at 773–76. Thus, the Court must now review the motion to compel arbitration under the Rule 56 summary judgment standard. *See id.*

"When applying the Rule 56 standard to a motion to compel arbitration, a court shall grant the motion when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Stephenson*, 2021 WL 3603322, at *3 (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In applying the Rule 56 standard to a motion to compel arbitration, "the court must draw all reasonable inferences in favor of the nonmoving party." *Guidotti*, 716 F.3d at 772 (citations omitted). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980).

4

## IV.    <u>DISCUSSION</u>

### A.    The Court Has the Authority to Determine Whether an Arbitration Agreement Exists Between the Parties

"The FAA, 9 U.S.C. §§ 1–16, embodies the 'national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.'" *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, (2006)). "Thus, the statute makes agreements to arbitrate 'valid, irrevocable, and enforceable' . . . subject only to traditional principles of contract formation and interpretation." *Neith v. ESquared Hosp. LLC*, No. 19-cv-13545, 2020 WL 278692, at \*4 (D.N.J. Jan. 16, 2020) (quoting 9 U.S.C. § 2). Before a court may compel a party to arbitrate under the FAA, the court "must consider two 'gateway' questions." *Bacon*, 959 F.3d at 599 (citations omitted). First, the court must consider whether the parties agreed to arbitrate, which courts determine by applying state-law principles of contract formation,[1] and second, the court must determine whether the dispute at issue falls within the scope of that agreement. *Id.* at 599–600; *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009).

However, parties may delegate these gateway questions of arbitrability to an arbitrator. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). "An agreement to arbitrate a 'gateway' issue[] of arbitrability 'is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the [FAA] operates on this additional arbitration agreement just as it does on any other.'" *Jenkins v. Petsmart, LLC*, No. 23-cv-2260, 2023 WL 8548677, at \*6 (E.D. Pa. Dec. 11, 2023) (quoting *Rent-A-Ctr.*, 561 U.S. at 70). "[W]hen the parties' contract [clearly and unmistakably] delegates the arbitrability question to an arbitrator, a court may not override the [delegation clause], unless a party [specifically] challenge[s] the delegation clause

---

[1]      Here, Pennsylvania principles of contract formation apply.

and the court concludes that the delegation clause is not enforceable." *Doe 1 v. Darden Restaurants, Inc.*, No. 3:20-cv-00862, 2022 WL 265949, at *4 (M.D. Pa. Jan. 27, 2022) (cleaned up) (citations omitted). In fact, "the Third Circuit has held that 'under section 4 of the FAA, courts retain the primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision.'" *Id.* (quoting *MZM Constr. Co., Inc. v. N. J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 402 (3d Cir. 2020)).

Defendants argue that the question of arbitrability was expressly delegated to the arbitrator. ECF No. 13 at 11–13. Defendants point to the provision in the DRP which states that "[t]he arbitrator will have the authority to determine whether a dispute is arbitrable and whether it is timely filed and pursued under the DRP and any applicable laws." ECF No. 13-3 at 33. Plaintiffs do not specifically challenge this so-called delegation clause, but rather attack the arbitration agreement as a whole, arguing that there is no valid enforceable agreement. *See generally* ECF Nos. 14, 24. However, this Court does not find that the delegation clause within the DRP clearly and unmistakably delegates threshold questions of arbitrability to the arbitrator.

Here, the clause refers to "whether a dispute is arbitrable," which does not clearly indicate that *enforceability* of the DRP is left solely to the arbitrator. ECF No. 13-3 at 33. This clause is unlike other delegation clauses courts have enforced which specifically state enforceability of the arbitration agreement is within the exclusive authority of the arbitrator. *See, e.g., Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010) (enforcing delegation clause which gave the arbitrator "exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement."); *Colon v. Conchetta, Inc.*, No. 17-cv-0959, 2017 WL 2572517, at *3 (E.D. Pa. June 14, 2017) (enforcing delegation clause which stated, *inter alia*, "[t]he Parties expressly agree that the arbitrator will decide all issues in the first instance, including, but not limited to all gateway

questions of arbitrability concerning: substantive arbitrability; . . . and whether the arbitration clause is substantively or procedurally unconscionable."); *Petsmart, LLC*, 2023 WL 8548677, at *6 (compelling arbitration where parties agreed to refer "Covered Disputes" to arbitration, including "issues of arbitrability (such as the formation, interpretation, applicability or *enforceability* of this [Dispute Resolution Policy]), . . . which must only be heard and decided by the appointed arbitrator" (cleaned up and emphasis added)); *Kocjancic v. Bayview Asset Mgmt., LLC*, No. CIV.A. 14-4037, 2014 WL 5786900, at *3 (E.D. Pa. Nov. 6, 2014) (enforcing delegation clause which stated "The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement[.]").

In fact, the Honorable Jorge Alonso in the Northern District of Illinois, upon consideration the very same DRP that is at issue in our case, explained that "[w]hether a dispute is 'arbitrable' may include certain gateway questions usually decided by a court, like whether a certain party is bound by an arbitration clause or whether a particular controversy falls within the scope of an arbitration clause," "[b]ut whether a dispute is 'arbitrable' generally does not include the question of whether the parties *actually formed* an arbitration agreement." *Grzanecki v. Darden Restaurants*, No. 19-cv-05032, 2020 WL 1888917, at *4 (N.D. Ill. Apr. 16, 2020) (citations omitted). This Court agrees with Judge Alonso, that the so-called "delegation clause" here, does not clearly and unmistakably delegate the gateway question of whether the parties have a valid arbitration agreement to the arbitrator. Therefore, this Court will consider this gateway question.

## B.     The DRP is an Enforceable Arbitration Agreement

As explained *supra*, to determine whether Plaintiffs entered into valid and enforceable agreements to arbitrate their disputes with Defendants, the DRP must be examined under state

contract law. "Under Pennsylvania law, contract formation requires: (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (citation omitted). "In the employment context, arbitration agreements will be upheld when they are 'specific enough (*i.e.* unambiguous) to cover the employee's claims' and 'the employee has *expressly agreed* to abide by the terms of [the] agreement.'" *Id.* (quoting *Quiles v. Fin. Exch. Co.*, 879 A.2d 281, 285 (Pa. Super. 2005)).

The limited discovery conducted here reveals that Plaintiffs Masci and Sessa signed the DRP Acknowledgement and then continued to work for Defendants for more than ten years. ECF No. 18 ¶¶ 2–3. Similarly, Plaintiff Danko signed the DRP Updates Form and then continued to work for Defendants for more than five years. *Id.* ¶ 5. These signatures by Plaintiffs show manifestation of an intention to be bound.

Additionally, the DRP is unambiguous and sufficiently broad to cover Plaintiffs' claims. The DRP applies "to all employment-related disputes or claims brought by the Employee against the Company or the Company against the Employee" other than specific exceptions identified in the DRP. ECF No 13-3 at 27. Moreover, the DRP specifies that "disputes which state a legal claim may be submitted to Arbitration . . . [and e]xamples of legal claims covered by DRP include but are not limited to: claims that that arise under the Civil Rights Act of 1964, Americans With Disabilities Act, Fair Labor Standards Act, Age Discrimination in Employment Act, . . . or any federal, state, or local ordinance or statute." *Id.* As Plaintiffs bring age discrimination claims against Defendants under the ADEA and the PHRA, their employment-related claims are clearly and explicitly covered by the DRP.

Moreover, adequate consideration exists. "The majority of courts within this circuit have

held that continued employment constitutes sufficient consideration for an arbitration agreement." *Doe 1*, 2022 WL 265949, at *10 (collecting cases). This Court joins the majority of other courts in this circuit in finding that Plaintiffs' continued employment was sufficient consideration to support the DRP in this case.

### C.  The DRP Not Unconscionable

Plaintiffs challenge the DRP as unconscionable. Under Pennsylvania law, a showing of unconscionability requires both procedural and substantive elements. *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 230 (3d Cir. 2012). Pennsylvania has adopted a "sliding-scale approach" to unconscionability, meaning "where the procedural unconscionability is very high, a lesser degree of substantive unconscionability may be required, and presumably, vice-versa." *Id.* (internal quotation marks and citation omitted). "Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 265 (3d Cir. 2003) (internal quotation marks and citations omitted). "In evaluating procedural unconscionability, courts consider 'the take-it-or-leave-it nature of the standardized form of the document, the parties' relative bargaining positions, and the degree of economic compulsion motivating the adhering party.'" *Doe 1*, 2022 WL 265949, at *8 (quoting *Quilloin*, 673 F.3d at 235).

Substantive unconscionability, on the other hand, "refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Quilloin*, 673 F.3d at 230 (internal quotation marks and citations omitted). "Courts may consider the following factors to determine whether an arbitration agreement is substantively unconscionable: severe restrictions on discovery, high arbitration costs borne by one party,

9

limitations on remedies, and curtailed judicial review." *Doe 1*, 2022 WL 265949, at *9 (internal quotation marks and citations omitted). The Third Circuit has explained that: "[a]n arbitration agreement cannot be construed as substantively unconscionable where it does not alter or limit the rights and remedies available to a party in the arbitral forum." *Quilloin*, 673 F.3d at 230 (internal quotation marks and citations omitted).

In this case, the level of procedural unconscionability surrounding the DRP with respect to the Plaintiffs is high. It was presented to the Plaintiffs on a take-it-or-leave-it basis as a condition of their employment after they were already employed by Defendants. Moreover, the DRP is standardized and is used nationwide by the Defendants, which are sophisticated entities with an abundance of business knowledge with the benefit of counsel to draft and review the DRP. However, Plaintiffs must prove both procedural and substantive unconscionability for the DRP to be set aside and here, Plaintiffs cannot prove that the DRP is substantively unconscionable.

The DRP is not substantively unconscionable. Plaintiffs' substantive unconscionability argument appears to focus on a purported lack of clarity as to whether legal claims "must" proceed to arbitration, focusing on a paragraph under the heading "What is covered under DRP?", which states "[o]nly disputes which state a legal claim may be submitted to Arbitration." ECF No. 13-3 at 11; *see also* ECF No. 24 at 4–5; ECF No. 14 at 7–10. However, Plaintiffs ignore the next bolded paragraph, which states "The DRP is the sole means for resolving covered employment-related disputes, instead of court actions. . . . This means DRP-eligible disputes will NOT BE RESOLVED BY A JUDGE OR JURY." ECF No. 13-3 at 11. Such language clearly and unmistakably waives Plaintiffs' rights to pursue their discrimination claims in this Court.

Plaintiffs also argue that the DRP is entirely one sided and seem to suggest that the DRP is unconscionable because Plaintiffs "seek damages under a federal statutory remedy and not on the

basis of a breach of contract." ECF No. 14 at 10. But the DRP does not limit the damages that Plaintiffs may receive. In fact, it provides, "[i]n arbitration, an arbitrator can award the same remedies and damages as a court of law." ECF No. 13-3 at 41.  Additionally, the DRP is not grossly favorable to Defendants. Under the DRP, Defendants "will pay the arbitrator's fees and expenses, any costs for the hearing facility, and any costs of the arbitration service." *Id.* at 33.  The DRP further provides that "[a]ny other expenses incurred by a party during the arbitration are the party's responsibility subject to remedies awarded by the arbitrator in accordance with applicable law. This includes, by way of example only, transcript preparation fees, attorneys' fees, and expert witness fees." *Id.* Moreover, it states that "an arbitrator is authorized to award fees and costs in accordance with and subject to the limitations of applicable law." *Id.*

Thus, the cost of arbitration is presumably the same or less than the cost of bringing a lawsuit in federal court. *See Doe 1*, 2022 WL 265949, at *9 (analyzing the same DRP at issue in this case and finding the DRP not substantively unconscionable). Accordingly, the Court finds that the DRP is not substantively unconscionable, and because Plaintiffs have not proven both procedural and substantive unconscionability, the DRP is not unconscionable.

In summary, because there is no genuine dispute as to a material fact regarding the enforceability of the DRP to this dispute, this Court will compel arbitration consistent with the parties' agreement.

### D.    A Stay Pending Arbitration is Appropriate

Section 3 of the FAA requires courts, upon motion, to stay litigation "upon being satisfied that" the issues involved are "referable to arbitration" under a written arbitration agreement. 9 U.S.C. § 3. The Third Circuit has noted that "the plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." *Lloyd*

*v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004). Here, neither Plaintiffs nor Defendants have requested that this Court stay the action pending arbitration. However, this case also alleges violations of the PHRA, and the Pennsylvania Arbitration Act requires a stay of judicial proceedings regardless of any motion for a stay. *See* 42 Pa. Cons. Stat. § 7304(d); *see also Asberry-Jones v. Wells Fargo Bank, Nat'l Ass'n*, No. CV 19-83, 2019 WL 2077731, at *6 (E.D. Pa. May 10, 2019) (staying action pending resolution of arbitration in case involving violations of Title VII, 42 U.S.C. § 1981, and the PHRA). Accordingly, this Court will stay this action pending the resolution of the arbitration proceedings.

V.    **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Compel Arbitration (ECF No. 13) will be granted and this case will be stayed pending arbitration. An appropriate Order will follow.

BY THE COURT:

/s/ **Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**